UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

EUGENE RAY COBELL,

                    Petitioner,

        v.

WARDEN JOHANNA SMITH,

                    Respondent.

Case No. 1:10-cv-00159-CWD

**MEMORANDUM DECISION AND ORDER**

        Petitioner has filed a Motion for Reconsideration in this closed habeas corpus matter. (Dkt. 31.) Respondent has filed a Response, and Petitioner has filed a Reply. (Dkts. 32, 33.) Having reviewed the record and the briefing of the parties, the Court concludes that oral argument is unnecessary. After due consideration, the Court will deny the Motion for Reconsideration for the reasons that follow.

## REVIEW OF MOTION FOR RECONSIDERATION

### 1.    Background

        The Idaho Court of Appeals summarized the incident that led to Petitioner's arrest and conviction as follows:

> Cobell, a seventy-two-year-old man, was visiting the home of his niece and grandniece, a twenty-year-old woman. One evening, after the

MEMORANDUM DECISION AND ORDER - 1

other members of the family went to bed, Cobell and his grandniece
remained on the couch. The grandniece fell asleep with her head on
Cobell's shoulder and was awakened by Cobell fondling and kissing her.
When she sat up alarmed, Cobell forced her to the ground, removed her
clothing, performed oral sex on her, penetrated her with his penis, and
digitally penetrated her anus while pulling her head back by her ponytail.
The victim reported the incident to her mother. When her mother
confronted Cobell, he initially responded that he did not do anything but
later admitted that he and the victim were just being friendly but that he
could not have raped her because he was impotent.

(State's Lodging B-4, pp. 1-2.)

Based on this incident, the State charged Petitioner with one count of rape and one
count of penetration by a foreign object, and he was convicted on both counts after a jury
trial. The district court sentenced Petitioner to concurrent terms of life in prison, with the
first ten years fixed. (State's Lodging A-1, pp. 80-81.)

On direct appeal of his conviction, Petitioner argued, in relevant part: (1) that the
district court violated his constitutional rights when it allowed the prosecutor to
cross-examine him in a manner that permitted the jury to infer guilt from his silence after
he had been given *Miranda* warnings; and (2) that the prosecutor committed prejudicial
misconduct on cross-examination and in closing argument that deprived him of his Sixth
and Fourteenth Amendment rights to a fair trial. (State's Lodging B-1, pp. 8-32.) While
the Idaho Court of Appeals agreed with Petitioner that a question asked of him on cross-
examination violated his constitutional rights, it found the error harmless beyond a
reasonable doubt. (State's Lodging B-4, pp. 5-6.) The Idaho Court of Appeals rejected the
prosecutorial misconduct claim, finding no fundamental error. (State's Lodging B-4, pp.

**MEMORANDUM DECISION AND ORDER - 2**

8-9.) Petitioner filed a petition for review, but the Idaho Supreme Court declined to review the case. (State's Lodgings B-7.)

Petitioner next filed a Petition for Writ of Habeas Corpus in this Court, raising three claims of constitutional error. (Dkt. 1.) Claims 1 and 2 generally correspond to the "use of silence" and prosecutorial misconduct claims that Petitioner raised during his direct appeal in state court. (Dkt. 1, pp. 2-3.) Claim 3 is that his concurrent sentences of ten years to life amount to cruel and unusual punishment, in violation of the Eighth Amendment. (Dkt. 1, p. 3.)

While the federal matter was pending, Petitioner returned to state court and raised numerous claims in a petition for post-conviction relief. (State's Lodging C-5.) The state court found the claims frivolous and denied appointment of counsel on that basis, and Petitioner did not file an appeal. (State's Lodging C-5, p. 3; State's Lodging C-6.) Instead, he lodged a Supplemental Petition in this Court, in which he reiterated the allegations in the original Petition and included new claims of ineffective assistance of trial and appellate counsel. (Dkt. 12.)

After reviewing the briefing by the parties and the state court record, the Court entered an Order granting partial summary dismissal to Respondent on Claim 3 and all claims in the Supplemental Petition (Dkt. 19), and allowed Petitioner to proceed to the merits of Claims 1 and 2. Those claims were dismissed by separate order after the Answer and Reply were filed. (Dkt. 31.) Petitioner's Motion for Reconsideration challenges

**MEMORANDUM DECISION AND ORDER - 3**

dismissal of the claims determined to be procedurally defaulted, as well as the claims

denied on the merits.

**2.       Standard of Law for Motion for Reconsideration**

Because the Judgment entered in this case encompassed both the procedural and

merits decisions on Petitioner's claims that occurred in two different Orders (July 18,

2011, and November 26, 2012), and the Motion for Reconsideration was filed within 28

days of the Judgment, Federal Rule of Civil Procedure 59(e) applies to Petitioner's

Motion.

In *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877 (9th Cir. 2000), the

United State Court of Appeals for the Ninth Circuit clarified the limited use of a Rule

59(e) motion:

> Although Rule 59(e) permits a district court to reconsider and amend
> a previous order, the rule offers an "extraordinary remedy, to be used
> sparingly in the interests of finality and conservation of judicial resources."
> 12 James Wm. Moore et al., Moore's Federal Practice § 59.30[4] (3d ed.
> 2000). Indeed, "a motion for reconsideration should not be granted, absent
> highly unusual circumstances, unless the district court is presented with
> newly discovered evidence, committed clear error, or if there is an
> intervening change in the controlling law." *389 Orange Street Partners v.
> Arnold*, 179 F.3d 656, 665 (9th Cir.1999). A Rule 59(e) motion may not be
> used to raise arguments or present evidence for the first time when they
> could reasonably have been raised earlier in the litigation. *See id.*

*Id*. at 890. Rule 59(e) relief also is available if the initial decision of the court was

"manifestly unjust." *Ybarra v. McDaniel*, 656 F.3d 984, 998 (9th Cir. 2011).

**MEMORANDUM DECISION AND ORDER - 4**

**3.**   **Discussion**

**A.**   ***Procedural Default of Claim 3: Cruel and Unusual Punishment***

In the Motion for Reconsideration, Petitioner argues that "this action is hindered and chilled by the extraordinary denial of access to a law library and legal assistance." (Dkt. 31, p. 1.)[1] He references the "removal of Claim 3" from his Petition on grounds of procedural default, and further argues that "he has been denied the opportunity to show cause and prejudice, that would excuse his errors." (Dkt. 31, p. 2.)

Claim 3, the Eighth Amendment sentencing claim, was brought on *state law* grounds on direct appeal. Petitioner's "cause" argument fails because, as the Court has already explained, he was represented by counsel on direct appeal, and, thus, his lack of additional pro se legal materials is immaterial.

Neither can Petitioner show "prejudice" for the default of his claim. At the time the Idaho Court of Appeals rendered its opinion in 2009, no precedent from the United States Supreme Court existed to support Petitioner's argument that he received a constitutionally excessive sentence for the serious offenses of rape and sexual penetration with a foreign object. *See Rummel v. Estelle*, 445 U.S. 263, 274 n.11 (1980) (The sentence of life with the possibility of parole not unconstitutional under a recidivism

---

[1] In addition, Petitioner cites "age and a debilitating geriatric condition" as additional factors supporting an argument of "cause." (*Id.*) However, Petitioner provides no specific facts that would demonstrate how these physical conditions support a claim of cause to excuse the procedural default of his claims during the time period at issue.

**MEMORANDUM DECISION AND ORDER - 5**

statue where the underlying offenses were fraudulent use of a credit card to obtain $80 in goods and services, passing a forged check for $28.36, and obtaining $120.75 by false pretenses; the Court cited an example of a disproportionate sentence as "if a legislature made overtime parking a felony punishable by life imprisonment."); *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991) (The Court affirmed a Michigan court judgment sentencing the defendant to a statutory mandatory life sentence without the possibility of parole for possessing more than 650 grams of cocaine; only a "gross disproportionality principle" can be extrapolated from among the majority and concurring justices' opinions in this case); *Lockyer v. Andrade*, 538 U.S. 63 (2003) (two consecutive sentences of 25 years to life in prison for a "third strike" provision of state law for stealing $150 worth of videotapes did not violate the gross disproportionality principle and did not warrant habeas corpus relief); *Ewing v. California*, 538 U.S. 11 (2003) (same result for inmate convicted of felony grand theft for stealing three golf clubs, worth $399 apiece.)

Because the state criminal statutes under which Petitioner was convicted permit a sentence of up to life imprisonment[2] and Petitioner's sentences are for more serious crimes than those the United States Supreme Court has addressed, Petitioner cannot show that his Eighth Amendment claim would have been successful in any forum. Thus, he would not have been able to meet the high standard to be granted relief by the Idaho

---

[2] *See* Idaho Code §§ 18-6104 (sentence for rape is between one year and life), 18-6608 (sentence for sexual penetration by use of a foreign object is up to life).

**MEMORANDUM DECISION AND ORDER - 6**

appellate courts on federal constitutional grounds (hence, there is no prejudice), *and* he is not entitled to relief under 28 U.S.C. §2254 (hence, his claim would have been denied had it proceeded to the merits in this action).

### B. *Procedural Default of Ineffective Assistance Claims Brought on Post-Conviction Review*

After Petitioner filed a vague petition for post-conviction relief, the state district court entered a denial of Petitioner's motion for appointment of counsel and a notice of intent to dismiss the petition. (State's Lodging C-1 to C-3.) Petitioner then filed a supplemental affidavit, in which Petitioner asserted that the sexual relations that occurred between him and his grandniece–who was 52 years his junior–were consensual, as he argued at trial. (State's Lodging C-4.) He also elaborated somewhat on his ineffective assistance of counsel claims:

(1)   "[Trial counsel] failed to ask for a change of venue because I am Native American from an Indian Reservation in Montana."

(2)   "He did not request that the jury pool contain minorities and elderly, which violates my right to be tried by a jury of my peers."

(3)   "He failed to question potential jury members about being prejudice[d] against Native Americans and if they could be fair."

(4)   "My attorney failed to develop a defense and provide any witnesses and did not use evidence that was available."

(5)   "My coun[sel] failed to cross examine witnesses in a proper manner; he did not question their cred[ibility] and did not make the jury aware that most of the testimony was [hear]say."

**MEMORANDUM DECISION AND ORDER - 7**

(6)     "He allowed the prosecution to degrade and badger me and allowed the prosecutor to prejudice the jury and allowed my rights to a fair trial to be violated."

(7)     "My attorney during a conference with the judge and prosecutor allowed the Court to rule against evidence that was crucial to the outcome of the trial. His argument was weak and he did not represent me like he should have."

(8)     "He should have demand[ed] that evidence showing the victim had a STD be allowed, When he heard the statement made by the prosecutor that the victim had said: 'that she had not had sex with anyone but the defendant for six months,' then he should have asked for a mistrial because the victim stood impeached. Because I was tested and test results were negative."

(State's Lodging C-4, pp. 1-3.)

The state district court dismissed the post-conviction petition as "patently frivolous" (State's Lodging C-5, p. 3), and Petitioner did not file an appeal of denial of the motion for appointment of counsel, an appeal of the dismissal of the post-conviction petition, or a request for appointment of counsel on appeal. (State's Lodging C-6.)

A denial of appointment of counsel at the initial post-conviction stage can trigger the exception to excuse a procedural default that was established in *Martinez v. Ryan* 132 S.Ct. 1309 (2012).The *Martinez* Court explained that the limited exception was created "as an equitable matter, that the initial-review collateral proceeding, if undertaken *without counsel* or with ineffective counsel, may not have been sufficient to ensure that proper consideration was given to a substantial claim." *Id.* at 1318 (emphasis added). "To overcome the default, a prisoner must also demonstrate that the underlying

**MEMORANDUM DECISION AND ORDER - 8**

ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Id.* at 1318.

However, in Petitioner's case, the threshold question is whether the default of Petitioner's claims was caused by the trial court's failure to appoint counsel prior to dismissing Petitioner's claims (potentially within *Martinez*), or whether the default was caused by Petitioner's own failure to appeal denial of his post-conviction claims and denial of appointment of counsel to the Idaho appellate courts (not within *Martinez*). The state court record demonstrates that: (1) Petitioner actually identified and brought his ineffective assistance of trial counsel claims in the initial post-conviction proceeding (unlike *Martinez*, where the claims were omitted completely); (2) Petitioner had the ability to prepare and submit a request for appointment of counsel and a notice of appeal because he prepared and submitted other appropriate pro se pleadings and papers; (3) Petitioner could look to the filings made by his direct appeal counsel as a sample of appellate filings; and (4) a notice of appeal is a simple form. As a result, the Court concludes that the default of Petitioner's claims in this instance was caused by his own failure to file an appeal to challenge the state district court's dismissal of the claims on post-conviction review and failure to appoint counsel for him.

Other courts addressing similar *Martinez* issues have concluded likewise. *Cf. Arnold v. Dormire*, 675 F.3d 1082, 1087 (8th Cir. 2012) ("Arnold's multiple ineffective

**MEMORANDUM DECISION AND ORDER - 9**

assistance claims were litigated in his initial-review collateral proceeding, but not

preserved on appeal. Thus, unlike *Martinez*, Arnold has already had his day in court;

deprivation of a second day does not constitute cause."); *cf. Bray v. Belleque*, 201 WL

1409328 (D. Or. 2012) (same); *cf. Cook v. Ryan*, 2012 WL 2798789 (D. Ariz. 2012)

(same). While these cases are somewhat different because the petitioners had counsel in

the initial post-conviction setting, these cases are similar because the claims were raised

in the initial proceeding but not on appeal, with the default caused by the failure to appeal

rather than the failure to raise the claims in the first instance.

In addition, these cases are aligned with the purpose of *Martinez*, which singularly

was concerned that, if ineffective assistance of trial counsel claims were not brought in

the collateral proceeding which provided the first occasion to raise a claim of ineffective

assistance at trial, the effect was that the claims could not be brought *at all*:

> As *Coleman* recognized, [there is] a key difference between
> initial-review collateral proceedings and other kinds of collateral
> proceedings. When an attorney errs in initial-review collateral proceedings,
> it is likely that no state court at any level will hear the prisoner's claim. This
> Court on direct review of the state proceeding could not consider or
> adjudicate the claim. And if counsel's errors in an initial-review collateral
> proceeding do not establish cause to excuse the procedural default in a
> federal habeas proceeding, no court will review the prisoner's claims.
> The same is not true when counsel errs in other kinds of postconviction
> proceedings. While counsel's errors in these proceedings preclude any
> further review of the prisoner's claim, the claim will have been addressed
> by one court, whether it be the trial court, the appellate court on direct
> review, or the trial court in an initial-review collateral proceeding.

**MEMORANDUM DECISION AND ORDER - 10**

132 S.Ct. at 1316 (citations omitted).

In contrast, in Petitioner's case, the claims *were* brought in the initial-review collateral proceeding, giving one court the opportunity to hear them. Thus, the aim of *Martinez* was satisfied in Petitioner's case. It was Petitioner's failure to bring the claims before a second court, which is not a concern of *Martinez*, that caused the default of his claims for federal habeas corpus purposes.

Further, because the record demonstrates that Petitioner had the ability to, and did, bring his claims before the state district court, equity is satisfied without resort to the cause and prejudice exception:

> The rules for when a prisoner may establish cause to excuse a procedural default are elaborated in the exercise of the Court's discretion. These rules reflect an equitable judgment that *only where* a prisoner *is impeded or obstructed* in complying with the State's established procedures will a federal habeas court excuse the prisoner from the usual sanction of default. Allowing a federal habeas court to hear a claim of ineffective assistance of trial counsel when an attorney's errors (or the absence of an attorney) *caused* a procedural default in an initial-review collateral proceeding acknowledges, as an equitable matter, that the initial-review collateral proceeding, if undertaken without counsel or with ineffective counsel, may not have been sufficient to ensure that proper consideration was given to a substantial claim.

132 S.Ct. at 1318 (citations omitted) (emphasis added).

In Petitioner's case, the state has in place several safeguards for ensuring that substantial ineffective assistance of trial counsel claims can be adjudicated–Petitioner simply chose not to use them. For example, Petitioner could have filed a notice of appeal

**MEMORANDUM DECISION AND ORDER - 11**

to challenge the failure to appoint counsel, a notice of appeal to challenge the dismissal of the claims, and a motion for appointment of counsel on appeal. Because Petitioner had already filed his federal habeas corpus petition (March 25, 2010) before he filed his state post-conviction petition (May 17, 2010), the record suggests that Petitioner simply bypassed the available state  avenues open to pursue his ineffective assistance of trial counsel claims in favor of a federal forum. This, he is not entitled to do.[3]

Finally, the *Martinez* Court expressly emphasized that it was creating an equitable, not a constitutional exception–meaning that states are not required to appoint counsel for every petitioner on post-conviction review, regardless of the type of claims asserted:

---

[3] Petitioner's failure to present the claims on appeal deprived the state appellate courts of an opportunity to hear the merits of the claims, which is the concept at the heart of procedural default, as described in *O'Sullivan v. Boerckel*:

> Section 2254(c) requires only that state prisoners give state courts a fair opportunity to act on their claims. State courts, like federal courts, are obliged to enforce federal law. Comity thus dictates that when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief. This rule of comity reduces friction between the state and federal court systems by avoiding the "unseem[liness]" of a federal district court's overturning a state court conviction without the state courts having had an opportunity to correct the constitutional violation in the first instance.

> Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, we conclude that state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.

526 U.S. 838, 844-45 (1999) (citations omitted).

**MEMORANDUM DECISION AND ORDER - 12**

The holding here ought not to put a significant strain on state resources. When faced with the question whether there is cause for an apparent default, a State may answer that the ineffective-assistance-of-trial-counsel claim is insubstantial, *i.e.*, it does not have any merit or that it is wholly without factual support, or that the attorney in the initial-review collateral proceeding did not perform below constitutional standards.

1332 S.Ct. at 1319. Thus, Idaho courts are free to determine, as in Petitioner's case, that frivolous or meritless claims do not require appointment of counsel.[4] When a court exercises that option, it does not mean that *Martinez* is invoked automatically. Because the Court concludes that the procedural default in this case was not caused by the failure to appoint counsel or the inability of the pro se petitioner to bring his ineffective assistance of counsel claims in the initial collateral review proceeding, but caused by the petitioner's failure to appeal dismissal of his claims, the Court need not address whether the claims are substantial.

Nevertheless, in the alternative, the Court concludes that Petitioner's claims are unsupported by sufficient facts, and, therefore, not substantial, in the context of the entire state court record before this Court. A further opportunity to argue that the claims are substantial or to develop those claims further would not be fruitful here, as Petitioner was afforded an opportunity to do so in the post-conviction action before the state district

---

[4] In most cases in Idaho, the judge who presided over the criminal proceedings is assigned to preside over the post-conviction proceedings, and, thus, the judge has historical knowledge of the case to be able to better assess the substantiality of the claims and the need for counsel in the initial post-conviction proceeding than a new judge. This was true in Petitioner's case. (State's Lodgings A-1, C-5.)

**MEMORANDUM DECISION AND ORDER - 13**

court dismissed them as frivolous. For all of the foregoing reasons, the Court concludes that *Martinez v. Ryan* does not apply to excuse the default of Petitioner's ineffective assistance of trial counsel claims.

Petitioner brings forward nothing new in his Motion for Reconsideration that the Court has not already considered regarding cause for the procedural default of his ineffective assistance of counsel claims. Accordingly, Rule 59(e) relief is not warranted.

### C.    *Actual Innocence to Excuse Procedural Default*

Petitioner also argues that he is actually innocent, and that the court's failure to consider Petitioner's claims would result in a "fundamental miscarriage of justice." *McCleskey v. Zant*, 499 U.S. 467, 494 (1991). To show a miscarriage of justice, a petitioner must make a colorable showing of factual innocence. *Herrera v. Collins*, 506 U.S. 390, 404 (1993). If a petitioner brings forward new evidence not presented at trial which tends to show his innocence, the Court must then determine whether, "in light of the new evidence, no juror, acting reasonably, would have voted to find [the defendant] guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 329 (1995). Types of evidence "which may establish factual innocence include credible declarations of guilt by another, *see Sawyer v. Whitley*, 505 U.S. 333, 340 (1992), trustworthy eyewitness accounts, *see Schlup*, 513 U.S. at 331, and exculpatory scientific evidence." *Pitts v. Norris*, 85 F.3d 348, 350-51 (8th Cir. 1996).

**MEMORANDUM DECISION AND ORDER - 14**

Petitioner argues: "That rape could not have occurred if the defendant was impotent, and both the prosecutor and the defense counsel had the ability to know that this issue required the opinion of a medical expert." (Dkt. 31, p. 3.) This is not new evidence that was not available at trial, and so it does not qualify to support actual innocence. In addition, the Court previously addressed this argument, and Petitioner provides nothing new at this stage to change the outcome of his actual innocence "gateway" claim.

The Idaho Court of Appeals pointed to the "strong" evidence supporting the conviction in finding harmless error: the victim's family members testified that the victim did not delay in reporting the assault to them and that she was highly agitated when she did so; the description of the victim's emotional state was corroborated by the first police officers to arrive; and a medical examination at the hospital revealed that the victim had injuries that were consistent with her version of the events. (State' Lodging B-4, p. 6; State's Lodging A-3, pp. 72, 131, 258, 292, 301-05, 378.)

This Court reiterates that it is highly implausible that the 20-year-old grandniece engaged in "friendly, consensual" sexual relations with her 72-year-old great-uncle. In contrast to Petitioner's characterization of the incident, the victim told a frightening and compelling story at trial:

> Prosecutor:  Okay. when he threw you over and was on top of you, what was the first thing he did at that point?

**MEMORANDUM DECISION AND ORDER - 15**

Danielle:        He yanked me down by him and took my pants off first, jerked my pants off, and then grabbed my shoulders and pulled me up because I was laying down, and ripped my shirt and bra off over my head.

Prosecutor:     When he ripped your shirt and your bra off over your head, was that kind of all in one motion grabbing it and pulling it off?

Danielle:        Yes.

Prosecutor:     What were you thinking of doing?

Danielle:        I was terrified and I was in complete shock. I didn't know what was going on. And I said "uncle" and I didn't know what to say.

Prosecutor:     Why did you say "uncle"?

Danielle:        I thought maybe if he heard it, you know, "uncle" as a family member, he would maybe think, oh, yeah, that's right, I'm her uncle. I should stop.

(State's Lodging A-3, pp. 56-57.)

In addition, the victim testified:

Prosecutor:     What happened next?

Danielle:        And then he sat up and he unbuttoned his pants an he forced himself down on me and inserted his penis in my vagina.

Prosecutor:     What was he doing with his hands?

Danielle:        And I had my hair in a ponytail, and he grabbed it with his hand and yanked my head back like that so I couldn't see what was going on.

Prosecutor:     How did your neck feel?

**MEMORANDUM DECISION AND ORDER - 16**

| Danielle: | It was like at a really awkward angle and it hurt and I was terrified that he was going to break my neck. |
|---|---|

(*Id.*, p. 59.)

Petitioner's repeated claim that his medical condition made him impotent and incapable of full intercourse is not new evidence, as the victim testified that Petitioner was partially flaccid during the incident (State's Lodging A-3, p. 59), and Petitioner's wife also testified Petitioner suffered from erectile dysfunction during that time period. (*Id.*, p. 464.) Petitioner refuses to recognize that Idaho Code § 18-6103 provides: "The essential guilt of rape consists in the outrage to the person and feelings of the female. Any sexual penetration, however slight, is sufficient to complete the crime."

Petitioner himself testified at trial on direct examination:

| Petitioner: | The next thing I remember is I was giving her oral sex and she was responding and we weren't really getting any place because, you know, it just seemed like we were kind of hung up there. So I thought to myself I'm going to – like I do with my partner, I will get on top of her and I will go through the motion of having sex, regular sex. I thought, "Well, I will try this and I will try that and maybe I can satisfy her." |
|---|---|
| | And so this is what I did. I got up and I knelt between her legs and I unzipped my pants. And I took my pants and my shorts down and I took my penis out and I stroked it a couple times and there was nothing there. It was limp and unresponsive. But I got on top of her and I laid my member on her. |
| Counsel: | When you say "member," are you talking about your penis? |

| | |
|---|---|
| Petitioner: | Yes, my penis. And I laid it on her vagina or, you know, the opening or – between her legs. |
| Counsel: | What was her reaction during this time? |
| Petitioner: | There was no reaction. |
| Counsel: | What do you mean there was no reaction? |
| Petitioner: | There was nothing. She was just – you know, she was just – she didn't say anything one way or the other. I started moving like I was having intercourse, but I was just on top of her. There was nothing happening. I just laid on top of her. |

(State's Lodging A-3, pp. 428-29.)

On cross-examination, Petitioner further testified:

| | |
|---|---|
| Prosecutor: | You're grinding your penis up into her vaginal opening; right? |
| Petitioner: | It is flaccid, it is not – |
| Prosecutor: | You are grinding your penis into her vaginal opening; right? |
| Petitioner: | I don't know if it was in her vaginal opening or not. I was on top of her and I was pretending to have sex with her. |

(*Id.*, p. 450.)

Given that "[a]ny sexual penetration, however slight, is sufficient to complete the crime," according to the statute, Petitioner's testimony at trial–even with his testimony that his penis was flaccid– is enough to show he committed the crime and is not actually innocent.

**MEMORANDUM DECISION AND ORDER - 18**

As to the conviction for penetration with a foreign object, the victim testified at trial that the act occurred, and Petitioner testified that the act did not occur. This was a matter of credibility to be determined by the jury. Petitioner offers nothing new that would cast doubt on the jurors' determination of that count.

### D.   *Petitioner's Challenge to the Merits Decision*

Petitioner also repeats his arguments previously rejected by the Court as to the merits of Claims 1 and 2.

As to Claim 1, the state district court improperly allowed the prosecutor to ask questions about and argue that Petitioner, after being *Mirandized*, failed to tell a police officer that the victim consented to sexual contact; however, the Idaho appellate court found that the error was harmless. (Dkt. 31, pp. 4-6; State's Lodging B-4, pp. 7-8.) Petitioner first asserts that the Court did not state exactly what type of *Miranda* violation occurred in *Doyle v. Ohio*, 426 U.S. 610 (1976). In *Doyle*, a police informant was the state's witness who had aided police in setting up a controlled marijuana buy from Petitioners Doyle and Wood. Doyle and Wood were then charged with selling marijuana. Doyle chose to remain silent in the face of early police interrogation. However, at trial, Doyle testified that the police informant had framed him. Having little else to counter Doyle's surprise exculpatory story, the prosecutor questioned Doyle about why he had not told police officers that he was framed. The state did not argue harmless error in the

**MEMORANDUM DECISION AND ORDER - 19**

United States Supreme Court. The convictions were reversed. *Id*. The difference between Petitioner's case and Doyle's case was not the content of the impeachment information, but that harmless error was not at issue in *Doyle*.

Petitioner further asserts that he believes other cases exist to show that the *Miranda* violations were not harmless beyond a reasonable doubt, but he has no legal resources to find them. (Dkt. 33, p. 5.) In denying Petitioner's claim, the Court used United States Supreme Court cases of precedent that were relevant to the claims at hand, as required by 28 U.S.C. § 2254(d)(1). (Dkt. 29, pp. 9-11.)

 Though the source of clearly established federal law must come from the holdings of the United States Supreme Court, circuit law may be persuasive authority for determining whether a state court decision is an unreasonable application of Supreme Court precedent. *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999). However, "circuit precedent may [not] be used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] Court has not announced. . . ." *Marshall v. Rodgers*, 133 S.Ct. 1446, 1450 (2013) (citations omitted). Therefore, the Court need not search through circuit cases to determine whether one mirrors Petitioner's case; rather, only United States Supreme Court precedent is binding law on habeas corpus review. Here no Supreme Court case is so similar to Plaintiff's facts that it requires issuance of the writ.

**MEMORANDUM DECISION AND ORDER - 20**

As to Claim 2, Petitioner asserts that the prosecutor's misstatement of the evidence to the jury that Petitioner's impotence was "situational" was fundamental error, leading the jury to believe that he was not honest about his impotence. However, as noted elsewhere herein, the strength of the entire case shows that the misconduct did not render the trial fundamentally unfair.

**4.     Conclusion**

For all of the foregoing reasons, Petitioner has failed to establish any basis warranting Rule 59(e) relief. Accordingly, the Motion for Reconsideration will be denied, and the Court will not grant a certificate of appealability.

## ORDER

**IT IS ORDERED:**

1.     Petitioner's Motion for Reconsideration (Dkt. 31) is DENIED.

2.     The Court does not find its resolution of the Motion for Reconsideration to be reasonably debatable, and a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); Rule 11 of the Rules Governing Section 2254 Cases. If Petitioner files a timely notice of appeal, the Clerk of Court shall forward a copy of the notice of appeal, together with this Order, to the United States Court of Appeals for the Ninth Circuit. Petitioner may seek a certificate of appealability from the Ninth Circuit by filing a request in that court.

**MEMORANDUM DECISION AND ORDER - 21**



DATED: August 12, 2013

Honorable Candy W. Dale
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 22**